E-Filed 4/1/16

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM CURTIS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, et al.,<br><br>    Defendants. | Case No.  14-cv-05167-HRL<br><br>**ORDER GRANTING REQUESTS FOR JUDICIAL NOTICE**<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 84 |

Jim Curtis and Maria Curtis ("Plaintiffs") sue Nationstar Mortgage, LLC ("Nationstar"), NDEx West, LLC ("NDEx"), and U.S. Bank, N.A. as Trustee for Rali Series 2006-QO2 ("USBA") for violations of California's Homeowner Bill of Rights ("HBOR") and for related claims.  Nationstar and USBA (collectively "Defendants") have appeared and litigated this case, but NDEx has not.  Plaintiffs and Defendants have expressly consented to magistrate-judge jurisdiction.

Defendants move for summary judgment; Plaintiffs oppose.  Each party also requests judicial notice of certain public records.  The requests for judicial notice are granted.  The court, based on the briefs, declarations, and exhibits filed by the parties and based on the arguments heard on February 23, 2016, denies the motion for summary judgment.

**Judicial Notice**

Federal Rule of Evidence 201(b) generally permits a court to judicially notice public records as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  *See, e.g., Rosal v. First Federal Bank of California*, 671 F.Supp.2d 1111, 1121 (N.D. Cal. 2009).  Plaintiffs request judicial notice of three sections from the Making Home Affordable ("MHA") Program Handbook issued by the United States Treasury Department

on August 17, 2012: the cover, the forward, and the underwriting section.[1] Defendants request judicial notice of: (1) the deed of trust recorded by the Sonoma County Recorder's Office as document number 2006007300; (2) the assignment of deed of Trust recorded by the Sonoma County Recorder's Office as document number 2012072111; (3) the notice of trustee's sale recorded by the Sonoma County Recorder's Office as document number 2014066902; and (4) the Treasury Department's Supplemental Directive 09-01.[2] The court grants the parties' requests for judicial notice of these public records.

**Background**

Plaintiffs applied to modify the terms of their home's mortgage in 2011. Defendants approved a temporary payment plan ("TPP") in December of 2012. Plaintiffs argued the TPP was too high compared with the loan modification requirements set by the federal government's Home Affordable Modification Program ("HAMP"); Plaintiffs requested compliance with the HAMP 31%-of-gross-income requirement, but Defendants refused the request and denied the loan-modification application. Plaintiffs assert they completed a second loan-modification application in April of 2014. Defendants recorded a Notice of Trustee's Sale in September of 2014. Dkt. No. 76 at 2.

Plaintiffs sued Defendants in the Sonoma County Superior Court. Defendants removed the case to this court. Plaintiffs amended the complaint to claim intentional misrepresentation negligent misrepresentation, promissory estoppel, negligence, failure to use a single point of contact to communicate with Plaintiffs in violation of HBOR, the "dual tracking" recordation of a notice of trustee's sale while a completed loan application was pending in violation of HBOR, and unfair business practices in violation of California's Unfair Competition Law ("UCL"). The parties stipulated to postpone the pending trustee's sale until this case resolves. Dkt. No. 75.

Defendants moved to dismiss each claim in the first amended complaint. The court denied the motion with respect to the HBOR and UCL claims. The court dismissed the negligence claim

---

[1] MHA Handbook v4.0, accessed on March 28, 2016 at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_40.pdf.
[2] Accessed on March 28, 2016 at https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd0901.pdf

1    without leave to refile for lack of an applicable duty of reasonable care.  The court dismissed with
2    leave to refile: (1) the intentional misrepresentation and negligent misrepresentation claims for
3    failure to specifically plead who made the underlying misrepresentations or when and how the
4    misrepresentations occurred; and (2) the promissory estoppel claim for failure to plead a
5    substantial change in position.  Dkt. No. 76 at 7-8.  Plaintiffs timely filed a second amended
6    complaint that includes amended misrepresentation and estoppel claims.  Dkt. No. 77.  Defendants
7    moved for summary judgment a few months later.  Dkt. No. 84.

## Legal Standard

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of showing the basis for the motion and identifying the portions of pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden then shifts to the non-moving party to produce evidence supporting its claims or defenses.  *Id.*  The non-moving party may not rest upon more allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial.  *See id.*  A genuine issue of material fact is one that could reasonably be resolved in favor of either party.  A dispute is "material" only if it could affect the outcome of the case under the governing law.  *Anderson*, 477 U.S. at 248-49.

## Discussion

Defendants argue the intentional misrepresentation, negligent misrepresentation, and promissory estoppel claims fail as a matter of law.  These claims depend on the assertion that the TPP violated HAMP standards by charging more than 31% of Plaintiffs' gross income.

3

1   Defendants argue 31% is a target rather than a strict requirement and therefore the TPP did not
2   violate HAMP standards. Dkt. No. 84 at 16-17. Plaintiffs respond that Defendants cite an
3   outdated HAMP directive which, in August of 2012, was superseded by the issuance of version
4   4.0 of the MHA Program Handbook. That handbook states, instead, that failure to reduce monthly
5   mortgage payments to 31% fails to "satisfy HAMP Tier 1 requirements[.]" Dkt. No. 88 at 12.
6   Plaintiffs therefore consider Defendants' argument based on an outdated HAMP directive to be, at
7   best, "misleading and improper." *Id.* Defendants conceded at the oral argument that
8   Supplemental Directive 09-01 had been superseded by version 4.0 of the MHA Program
9   Handbook. The court agrees with Plaintiffs that then-operative HAMP standards directed
10  Nationstar and USBA to reduce the monthly payments in any HAMP Tier 1 modification offer to
11  31%. Defendants argued during the hearing on this motion that the TPP may not necessarily be a
12  HAMP Tier 1 offer, but the information before the court does not provide a basis to conclude
13  whether the TPP is properly classified as a HAMP Tier 1 offer. Defendants have therefore failed
14  to show there is no genuine dispute as to whether the 31-percent-of-income requirement applied to
15  the TPP.

16  Defendants also argue Plaintiffs lack standing for the misrepresentation and estoppel
17  claims because each of those claims depends on the implication that Plaintiffs are "intended
18  beneficiaries" of HAMP and Plaintiffs are not actually intended beneficiaries of HAMP. Dkt. No.
19  84 at 16-17. For this argument, Defendants rely upon a case in which the plaintiff argued he was
20  an intended beneficiary of an agreement between the loan servicer and the federal government.
21  *Cleveland v. Aurora Loan Services, LLC et al.*, 11-cv-773-PJH, 2011 WL 2020565 at *3 (N.D.
22  Cal. May 24, 2011). Plaintiffs make no such argument here. Rather, Plaintiffs argue that Joy
23  Collins ("Collins"), an authorized Nationstar agent, promised to Plaintiffs that Nationstar would
24  evaluate their loan modification requests in accord with HAMP standards and that the TPP would
25  charge 31% of their gross income. Dkt. No. 77 at 11. Arguments that depend on the statement
26  Plaintiffs attribute to Collins do not rely on any intended-beneficiary theory. The court therefore
27  rejects Defendants' standing argument.
28  Defendants raise Federal Rule of Civil Procedure 9(b) as a basis to dismiss the negligent-

4

misrepresentation claim for a lack of specificity in the pleadings. This summary judgment motion turns on whether genuine disputes of material fact exist in light of admissible evidence, not on whether the allegations provide the degree of specific notice required by the Federal Rules of Civil Procedure. The court denies Defendants' procedurally improper pleading-specificity argument.

Defendants also assert the misrepresentation and promissory-estoppel claims fail because "no competent evidence" supports the allegation that Defendants made a misrepresentation or promise. Dkt. No. 84 at 18, 21. Defendants bring two independent arguments to support this assertion. First, Defendants argue this court already "held" in the order on the motion to dismiss that "[t]he [TPP] letter mailed to Plaintiffs show they were evaluated, and approved, for a loan modification under the HAMP program" and that therefore the court has already conclusively ruled that Defendants' agents spoke honestly and complied with HAMP standards. Dkt. No. 84 at 18 (citing Dkt. No. 76 at 7). The two next sentences in the court's prior order clarify, however, that Plaintiffs' allegations plausibly show Plaintiffs were told a statement that was both "a misrepresentation and a promise"—they were told, allegedly, that the TPP would comply with HAMP's 31-percent-of-gross-income payment cap. Dkt. No. 76 at 7. The court therefore rejects Defendants' interpretation of the order on the motion to dismiss. Defendants argue secondarily that "no competent evidence" establishes the alleged misrepresentation or promise. Dkt. No. 84 at 18, 22. Plaintiffs respond with a declaration from Jim Curtis that asserts Collins made the alleged statement to him during a phone call. Dkt. No. 88-3. This declaration establishes genuine disputes as to whether Collins made any misrepresentation that could support the misrepresentation claim and whether Collins made any promise that could support the promissory-estoppel claim. The court therefore rejects Defendants' argument that "no evidence" creates any genuine dispute of material fact on these issues.

Defendants next, on the basis of *Rossberg v. Bank of America, N.A.*, 219 Cal. App. 4th 1481, 1499 (2013), argue Plaintiffs cannot prove causation based on the alleged misrepresentation because Plaintiffs' own mistakes led "inevitabl[y]" to all of Plaintiffs' financial harm—Plaintiffs caused their own initial financial harm with a default, and Plaintiffs caused any secondary financial harm by rejecting the lawful TPP offer. Dkt. No. 84 at 20. The court agrees with the

5

general proposition that financial harm directly caused by a default on a loan lacks a causal link to a later misrepresentation. Nevertheless, as previously discussed, Plaintiffs have established a genuine dispute as to whether Collins misrepresented how affordable the TPP offer would be. Likewise, the declaration of Jim Curtis asserts that he attempted to renegotiate the terms of the TPP offer so that it would be as affordable as Collins had represented it would be, but that Nationstar instead denied the pending loan-modification application altogether. Dkt. No. 88-3 at 2-3. His declaration therefore establishes a genuine dispute as to whether there is a causal link between the misrepresentation attributed to Collins and whatever financial harms resulted from the denial of the TPP.

Next, Defendants argue Plaintiffs failed to "plead the type of reliance necessary" to state a claim for promissory estoppel because Plaintiffs "posit hypothetical actions they could have undertaken, but do not plead that they took any other affirmative actions in reliance on the alleged promise." Dkt. No. 84 at 23. Defendants rely primarily upon a case that concludes promissory-estoppel pleadings are insufficient when they state simply that the plaintiff did "not pursu[e] other strategies[.]" *Graybill v. Wells Fargo Bank, N.A.*, 953 F.Supp.2d 1091, 1105 (N.D. Cal. 2013). Defendants, once again, raise a pleading-standards argument instead of a proper evidentiary argument; they discuss the inadequacy of Plaintiffs' "allegations" rather than the inadequacy of the admissible evidence. Dkt. No. 84 at 23. Defendants have therefore failed to carry their burden to show there is no genuine factual dispute as to the reliance element of the promissory-estoppel claim. The court notes, however, that the promissory-estoppel claim may well have failed if Defendants had fairly raised an argument based on evidence rather than allegations.

Defendants also assert the HBOR claims have become moot because HBOR does not entitle Plaintiffs to economic damages and the stay of the trustee's sale has already "cured" any arguable HBOR violation. Defendants are correct that HBOR provides only injunctive relief where, as here, the claimant's home has not yet been sold. Cal. Civ. Code § 2924.12(a)(1). Defendants are also correct that an HBOR claim for injunctive relief may become moot if a loan servicer provides the effect of injunctive relief by fully reconsidering a pending loan-modification application without violating HBOR again. *Monterossa v. Superior Court of Sacramento Cty.*,

6

237 Cal. App. 4th 747, 754 (2015), reh'g denied (July 6, 2015).  A loan servicer might, for example, moot a dual-tracking claim by fully reconsidering a pending loan-modification application without concurrently attempting to foreclose on the home.  *Id.*  Accordingly, this court has previously found that a dual-tracking claim and a single-point-of-contact claim both became moot when the plaintiff "obtained a subsequent review of his modification application during [a] stay in the litigation, resulting in effectively obtaining injunctive relief" on those claims.  *Le v. Bank of New York Mellon*, Case No. 14-cv-01949-KAW, 2015 WL 9319487 at 12 (Dec. 23, 2015).

The declaration of Nationstar employee Kimberly Cavagnaro asserts that Nationstar received a complete new loan-modification application from Plaintiffs after this lawsuit began and that Nationstar, upon review, denied that application on May 5, 2015.  Dkt. No. 85 at 9-10.  Taken alone, this information could perhaps support the conclusion that the HBOR claims have been mooted by the subsequent and procedurally proper review of a new loan-modification application.  The HBOR prohibition against dual tracking, however, continues to prohibit foreclosure until "15 days after the denial of the appeal" from an initial adverse decision.  Cal. Civ. Code § 2923.6(e)(2).  A subsequent loan-modification review is incomplete, and therefore cannot yet moot previous HBOR violations, when an appeal from an initial denial has not yet been resolved.  *Monterossa*, 237 Cal. App. 4th at 754.  The declaration of Jim Curtis asserts that Plaintiffs appealed in late May from their most recent loan modification denial and that Nationstar has not yet replied to the appeal.  Dkt. No. 88-3 at 6.  Plaintiffs have therefore established a genuine dispute of material fact as to whether Nationstar has completed a subsequent loan-modification review in compliance with the procedures required by HBOR; this genuine dispute precludes the court from finding at this time that Plaintiffs' HBOR claims have become moot.

Defendants rely upon *Copeland v. Ocwen Loan Servicing, LLC*, No. CV 13-05708 GAF, 2014 WL 6883418 at 4 (C.D. Cal. Dec. 4, 2014), to argue the single-point-of-contact claim fails as a matter of law for two related reasons: (1) a loan servicer need only "provide[]" a single point of contact in order to comply with HBOR; and (2) a loan servicer does not violate HBOR when it occasionally designates a new single point of contact.  Dkt. No. 84 at 27-28.  This court already

rejected virtually the same argument when it ruled that Plaintiffs' allegations of multiple points of contact were sufficient to state a plausible claim for violation of HBOR's single-point-of-contact requirement. Dkt. No. 76 at 5-6. A loan servicer may not satisfy California Civil Code § 2923.7 by simply designating a single point of contact that it does not, in fact, use as the singular point of contact for sending accurate information to the borrower. Rather, § 2923.7 requires a loan servicer to actually "establish" a "single" point of contact that has "the ability and authority to perform" certain "responsibilities," including the responsibility of providing the borrower with "timely" and "accurate" information about "the current status" of a pending loan-modification application. Judgment on a single-point-of-contact claim could therefore be supported by a jury finding that a defendant either: (1) sent status updates through multiple points of contact instead of the currently-designated single point of contact; or (2) failed to maintain a single point of contact that was able to provide "adequately" timely and accurate status updates. Cal. Civ. Code § 2923.7(b). The court does not read the *Copeland* decision to interpret or apply § 2923.7 in a contrary way; rather, that court more narrowly found that, on the record before it, the defendants had not only "provided" a point of contact, but had also generally "followed all provisions" of HBOR. No. CV 13-05708 GAF, 2014 WL 6883418 at 4.

Jim Curtis declares that between May 12, 2013 and May 16, 2013 he received four letters from the then-designated single point of contact, but that the letters contained contradictory information about the status of Plaintiffs' pending application. Dkt. No. 83-3 at 3-4. He also declares that Nationstar employee Bryce Hickman sent him a letter that included updates about Plaintiffs' pending application even though someone else, Ashley Hanely, was the designated single point of contact at that time. Dkt. No. 83-3 at 4. The declaration of Jim Curtis therefore raises genuine disputes of material fact as to whether Defendants actually used a single point of contact to send status updates to Plaintiffs and whether any such updates were adequately accurate.

The court also rejects the argument that no genuine dispute of material fact exists to preclude judgment for Defendants on the dual-tracking claim. Defendants do not dispute that they sent the written denial of a pending loan-modification application to a third party instead of

8

1   Plaintiffs, but Defendants raise two arguments for why it is "immaterial" that they sent the denial
2   to the wrong person: (1) "Plaintiffs are only entitled to notice of denial of 'complete' applications"
3   and Plaintiffs have no documentary proof that Nationstar ever deemed the pending application to
4   be complete, Dkt. No. 84 at 26-27; and, in the alternative, (2) HBOR requires only that a denial be
5   written down, not that the written denial be shared with anyone else, Dkt. No. 84 at 27.

6   The court rejects the argument that the application cannot be complete until Defendants
7   deem it complete. The undersigned does not read the prohibition against dual tracking to grant
8   loan servicers unilateral discretion to determine whether applications are complete or incomplete.
9   Rather, loan servicers must specify "reasonable timeframes" for the submission of the documents
10  they request, and the loan-modification application becomes complete when the borrower has
11  complied with any "reasonable" deadlines that were "specified[.]" Cal. Civ. Code § 2923.6(h);
12  *see Marino v. U.S. Bank, N.A.*, 15-cv-02935-HRL, Dkt. No. 26 at 3-4 (Oct. 10, 2015) (discussing
13  *Woodring v. Ocwen Loan Servicing, LLC*, No. CV 14-03416 BRO, 2014 WL 3558716 (C.D. Cal.,
14  July 18, 2014), and *Flores v. Nationstar Mortg. LLC*, No. CV 13-3898 PLA, 2014 WL 304766
15  (C.D. Cal., Jan. 6, 2014)) (concluding that completeness does not solely depend on whether a loan
16  servicer stated that a loan-modification application was complete). Jim Curtis's declaration
17  describes Plaintiffs' compliance with a series of document requests, including duplicative requests
18  and requests that did not set deadlines for compliance. Dkt. No. 88-3 at 2-5. That declaration
19  therefore establishes a genuine dispute of material fact as to whether Plaintiffs completed their
20  application, at some point, by complying with the subset of document-submission requests that
21  had set specific and reasonable deadlines.

22  The court also disagrees with the argument that a loan servicer need only write down the
23  denial of an application, but need not make any attempt to share the written denial with the
24  borrower. A loan servicer must make a "written determination" on a complete loan-modification
25  application so that the borrower will have an opportunity "to appeal the denial and to provide
26  evidence that the mortgage servicer's determination was in error," and it violates HBOR when a
27  notice of trustee's sale is recorded before the deadline for the borrower's appeal has run. Cal. Civ.
28  Code § 2923.6(c)(1). It would be quite strange if loan servicers had the authority to discreetly

United States District Court
Northern District of California

9

pocket veto pending loan applications without giving borrowers any fair opportunity to exercise their statutory right to challenge the denial. Defendants cite no authority to support their counterintuitive interpretation of HBOR; the court rejects it.

Finally, Defendants assert summary judgment should be entered on the UCL claim because the UCL claim is only viable so long as at least one other claim remains viable as a predicate. Dkt. No. 84 at 28-29. The parties agree upon the operative law; they merely dispute whether at least one of the other claims should survive the motion for summary judgment. The court has denied the summary-judgment motion as to the other claims and any of those claims could be a viable predicate for the UCL claim. The court therefore also denies the motion for summary judgment as to the UCL claim.

## Conclusion

The motion for summary judgment is denied. Two of Defendants' arguments rely on pleading standards that do not apply to a motion for summary judgment. Plaintiffs have, for each of Defendants' other arguments, established genuine disputes of material fact that preclude summary judgment.

Dated: 4/1/16

_____
HOWARD R. LLOYD
United States Magistrate Judge